**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| AUDREY EASON, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| MASTER SECURITY COMPANY, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

COMES NOW, Plaintiff Audrey Eason, and brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended. Plaintiff alleges that Defendant Master Security Company, LLC subjected Plaintiff to discrimination based sex, religion, and disability, including through its failure to provide a reasonable accommodation, and subjected Plaintiff to retaliation after Plaintiff engaged in protected activities, respectfully showing the Court as follows:

**JURISDICTION AND VENUE**

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act and the Americans with Disabilities Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action occurred, in Macon-Bibb County, Georgia, which is located within this judicial district.

## PARTIES

3.

Plaintiff Audrey Eason (hereinafter, "Plaintiff" or "Eason") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Ms. Eason was employed with Defendant Master Security Company, LLC.

4.

At all relevant times, Ms. Eason was considered a covered, non-exempt employee under Title VII of the Civil Rights Act and the Americans with Disabilities Act.

5.

Defendant Master Security Company, LLC (hereinafter, "Defendant") is a limited liability company, believed to be organized under the laws of the State of Maryland, with its principal office located at 10946 Beaver Dam Road, Suite D, Hunt Valley, Maryland 21030. Defendant may be served with process by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, located at 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

6.

Defendant is a private company in the business of providing security services for third parties. Defendant is engaged in interstate commerce and has an annual revenue in excess of

$500,000.00. Defendant has employed in excess of, at least, 400 individuals, working for at least 20 calendar weeks, in 2021 and in prior calendar years.

7.

Defendant is a covered employer within the meaning of Title VII of the Civil Rights Act and the Americans with Disabilities Act.

## STATEMENT OF FACTS

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Ms. Eason suffers from Anxiety Disorder and Post Traumatic Stress Disorder ("PTSD"), both of which are serious mental health conditions.

10.

Anxiety Disorder causes Ms. Eason and others to experience feelings of panic, extreme physical, mental, and emotional stress, and intense fear, and as a result, causes Ms. Eason to experience difficulty concentrating, managing time, inability to remain organized, and memory loss.

11.

PTSD is a trauma-related disorder caused by Ms. Eason's exposure to a traumatic event, a crime for which Ms. Eason was a victim during her employment with another company years earlier. Similarly, at times, PTSD reduces Ms. Eason's ability to remain attentive, decreases her stamina, causes problems with memory, confusion, and organization, and decreases her stress tolerance.

12.

Both of these conditions, alone and together, substantially limit Ms. Eason's major life activities, including her ability to work, and as a result, are considered disabilities under the Americans with Disabilities Act.

13.

Ms. Eason's supervisors were aware that she has, and sometimes struggles, with anxiety and PTSD.

14.

In Fall 2021, Ms. Eason's sister, who was employed at a Walmart store in Macon, Georgia became aware that Defendant had vacancies that it needed to fill at the store where the sister worked and suggested that Ms. Eason apply. Ms. Eason submitted an application and was interviewed for the position.

15.

Ms. Eason belongs to the Apostolic Church, a Christian denomination that was derived from the Pentecostal movement that is deeply spiritual in nature and subscribes to conservative values.

16.

During Ms. Eason's interview with Defendant, she brought up the fact that, as a result of her faith, she would not be able to work on Sundays and that, if she were scheduled to work on Wednesdays, she would need to get off of work by 5:30 pm so she could attend religious services on those evenings.

17.

The interviewer assured Ms. Eason that neither of her requests concerning her work schedule would be a problem, and Ms. Eason was offered a job.

18.

As soon as Ms. Eason began working in October 2021, she experienced a number of challenges. Specifically, there were times in which Ms. Eason was not able to clock-in for work using Defendant's mobile application, her time and attendance records were often inaccurate, Defendant did not initially provide her with the required uniforms, and Defendant would sometimes call Ms. Eason and other employees into work, but then immediately send them home once the supervisors realized that they actually had enough coverage for the shift.

19.

Additionally, Ms. Eason observed other employees violating company policy, including smoking cigarettes in work vehicles or leaving their assigned duty stations, as well as the premises all together, for several hours on end.

20.

However, Ms. Eason followed company policy and her performance was exemplary, as was acknowledged several times during her tenure by management.

21.

Shortly after Ms. Eason began working, Defendant began exclusively hiring men for the third-parties it services in Middle Georgia.

22.

One of Ms. Eason's coworkers said that she had heard a member of management say that the company was looking to hire "military men" to work as security guards.

23.

Ms. Eason also found out that Defendant was paying the newly-hired male employees at least $1.00 more per hour than the female security guards who had been employed longer.

24.

After Ms. Eason began working, Defendant hired Andrew Mullis to work as a security guard. Mr. Mullis was initially assigned to work 32.5 hours per week, but soon thereafter, Defendant took away Ms. Eason's Thursday shift and gave it Mr. Mullis, resulting in him being assigned to work 40 hours per week.

25.

After Ms. Eason's hours were cut, she contacted her direct supervisor, "Lieutenant," to discuss this issue, as well as the other problems she was experiencing as discussed herein.

26.

In response to Ms. Eason's complaint regarding her reduction in hours, Lieutenant said that the only way that Ms. Eason would be able to get additional hours would be if she worked on Sundays.

27.

Ms. Eason reminded Lieutenant of what she said during her interview about not being able to work on Sundays due to her faith, to which Lieutenant responded with apparent offense, telling Ms. Eason that he played music at his church, but that he had never made such ultimatums like her.

28.

Lieutenant also said that Mr. Mullis was given the Thursday shift because, unlike Ms. Eason, he was willing to work on Sundays. Ms. Eason also reminded her supervisor of her inability

to work on Sundays because of church obligations in a November 24, 2021 text message, and she also asked if she had done something wrong that caused her hours to be reduced, but the supervisor only responded to the text with Ms. Eason's schedule for the following week.

29.

Around this time, it was apparent that Defendant was trying to force its existing female employees to quit based on the way that Defendant treated the female employees.

30.

Specifically, and largely because of the timing of the changes in treatment, it began to appear to Ms. Eason that Defendant hired Ms. Eason and her female colleagues merely because it was in desperate need to fill the positions necessary in order to service its Middle Georgia clients. It also appeared that Defendant attempted to push out its female employees once Defendant had hired a sufficient number of its preferred, male employees.

31.

During this same time, Lieutenant told other employees that one female security guard had quit, but Ms. Eason later saw text messages where the female security guard had actually begged Lieutenant to be able to keep her job.

32.

By around early December 2021, after Ms. Eason found out about the pay disparities, the workplace had become so toxic based on sex that she felt it was necessary to make an initial inquiry with the Equal Employment Opportunity Commission (hereinafter, "EEOC"). Unfortunately, Ms. Eason was not able to schedule an intake interview, and as a result, did not pursue a charge of discrimination at that time. However, Ms. Eason's supervisor became aware of the fact that she made contact with the EEOC.

33.

On December 9, 2021 at 7:03 pm, Ms. Eason sent a text message to Lieutenant, advising him that she would need to take some time off because of her mental health.  She explained that since she had begun working for Defendant, her anxiety had been increasing.

34.

Although Ms. Eason did not mention the pay disparities between male and female employees at this time, she requested that Defendant pay her what it had initially said would be the starting pay of $14.00 per hour, as well as the number of hours that she had been told she would work, without having to work on Sunday.

35.

Ms. Eason had raised the same concerns to her supervisors several times on prior days.

36.

A little over five hours later, Lieutenant responded to Ms. Eason's text. Lieutenant failed to address *any* of Ms. Eason's concerns, instead falsely accusing Ms. Eason of violating several of Defendant's policies.

37.

Specifically, Lieutenant accused Ms. Eason of abandoning her post, that she had talked to a Salvation Army kettle worker, and she had remained in one location at the worksite for a 50-minute period.

38.

Lieutenant also took issue with the fact that Ms. Eason sent Lieutenant a text message at 9:34 am, twenty-six minutes before her scheduled shift, and as a result failed to provide the four-hour notice required under Defendant's policies.  However, not only had this occurred nearly two

days earlier and had not been raised as an issue previously, Ms. Eason's 9:34 am text was notifying Lieutenant that Ms. Eason felt ill when she woke up and needed to see a doctor.

39.

The text message situation was unavoidable, and Lieutenant's remaining assertions are clearly false.

40.

Regardless, Lieutenant began his 12:31 am text on December 10, 2021, advising Ms. Eason that "[w]e had decided earlier to move forward with your termination effective immediately."

Procedural/Administrative Background

41.

After she made an initial inquiry, Ms. Eason submitted her Charge of Discrimination to the Equal Employment Opportunity Commission on April 22, 2022, alleging that she had been subjected to discrimination based on her sex, religion, and disability, as well as retaliation for engaging in protected activities.  The EEOC assigned Ms. Eason Charge's Number 410-2022-01229.

42.

Defendant had actual notice of the EEOC Charge, participated in the administrative proceedings, and was represented by counsel at that time.

43.

On August 16, 2023, the EEOC issued a Determination and Notice of Rights, or the "Right to Sue," which Ms. Eason received through counsel the same day.

44.

Ms. Eason has exhausted her administrative remedies as to her Charge of Discrimination, and she is filing the instant action within ninety days of the issuance and his receipt of the Right to Sue.

## COUNT I:
## DISCRIMINATION BASED ON RACE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

45.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

46.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such person's sex.  42 U.S.C. § 2000e-2(a).

47.

Plaintiff is considered in a protected class as her sex is female.

48.

As alleged herein, Plaintiff was qualified for the position she held with Defendant and her performance was exemplary at all times.

49.

As alleged herein, Defendant took away some of Plaintiff's regularly-scheduled shifts, and reassigned said shifts to a less-qualified individual who is male. The result was that Defendant provided the male employee with more scheduled shifts that Plaintiff.

50.

As alleged herein, Plaintiff was one of several female security guards who were hired when Defendant was in desperate need to fill positions. However, Defendant explicitly stated that it preferred to hire male security guards, and once Defendant hired a sufficient number of male employees for the position, it terminated the employment of Ms. Eason and several other female security guards.

51.

Defendant will be unable to present any evidence of a legitimate, nondiscriminatory reasons for the acts and omissions raised herein – namely, reassigning Plaintiff's shifts to a less-qualified male employee and for terminating Plaintiff's employment in order to fill her position with a male employee – and for otherwise treating Plaintiff less favorably than her similarly situated counterparts who are not female.

52.

Defendant will be unable to prove that being male is a bona fide occupational qualification for the position of security guard.

53.

Plaintiff will prove that Defendant's stated reasons are pretextual and were indeed motivated by Plaintiff's sex.

54.

Plaintiff has been injured by Defendant's discrimination based on sex against her, and she is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages, if

available, in the amount of not less than $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT II:
## PAY DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

### 55.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

### 56.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such person's sex.  42 U.S.C. § 2000e-2(a).

### 57.

Plaintiff is considered in a protected class as her sex is female.

### 58.

As alleged herein, Defendant paid Plaintiff at a lower hourly rate than Plaintiff was promised when she was hired, less than Defendant's advertised starting pay, and less than Plaintiff's similarly situated male coworkers.

### 59.

According to Title VII, an unlawful employment practice is established when the complaining party demonstrates that a protected trait, including sex, was a motivating factor for such employment practice. 42 U.S.C. § 2000e-2(m).

60.

"In addition to the relief authorized by [42 U.S.C. § 1981a], liability may accrue and an aggrieved individual may obtain relief as provided in [42 U.S.C. § 2000e-5(g)(1)], including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." 42 U.S.C. § 2000e-5(e)(3)(B).[1]

61.

Stated another way, the unlawful employment practices alleged herein concerning Plaintiff's compensation that occurred in and around the time that Plaintiff's Charge of Discrimination was pending before the EEOC were similar and related to the unlawful employment practices that occurred two years prior to Plaintiff's filing of her Charge. And pursuant to the Lilly Ledbetter Fair Pay Act of 2009, Plaintiff does not have to show that Defendant's discriminatory decision to pay her less occurred within this period.

62.

Defendant will be unable to present any evidence of a legitimate, nondiscriminatory reasons for the acts and omissions raised herein and for otherwise treating and compensating Plaintiff less favorably than her similarly situated counterparts who are not female.

---

[1] *See also Schengrund v. Pa. State Univ.*, 705 F. Supp. 2d 425, 432-33 (M.D. Pa. 2009) (In discussing the Lilly Ledbetter Fair Pay Act of 2009 in a deferral state, "… if Plaintiffs demonstrate that their wages were the result of a discriminatory decision to pay them less money than their male coworkers, they may recover for each and every paycheck received from the present dating back to 300 days prior to the filing of their action with the EEOC (June 18, 2004), and they do not need to show that the discriminatory decision to pay them less occurred within this period. Additionally, they may recover back pay for up to two years prior to the earliest pay check received within this period.")

63.

Plaintiff will prove that Defendant's stated reasons are pretextual and were indeed motivated by Plaintiff's sex.

64.

Plaintiff has been injured by Defendant's pay discrimination based on sex against her, and she is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe benefits for up to two years preceding the filing of her Charge of Discrimination, front pay, injunctive relief, compensatory and punitive damages, if available, in the amount of not less than $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT III:
## DISCRIMINATION BASED ON RELIGION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

65.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

66.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such person's religion.  42 U.S.C. § 2000e-2(a).

67.

Plaintiff is considered in a protected class as she subscribes the Christian denomination of the Apostolic Church.

68.

As a result of her faith, Plaintiff has a genuinely held religious belief that she is prohibited from working on Sunday, which is considered the sabbath in her religion.  Additionally, Plaintiff's religion requires her to attend religious services on Wednesday evenings.

69.

As alleged herein, Plaintiff was qualified for the position she held with Defendant and her performance was exemplary at all times.

70.

As alleged herein, Defendant took away some of Plaintiff's regularly-scheduled shifts, and reassigned said shifts to a less-qualified individual who was not unable to work on days other than those that were reassigned as a result of his religion.

71.

In the alternative, and as alleged herein, Defendant terminated Plaintiff's employment either as a result of her faith or because her genuinely held religious beliefs that prevented Plaintiff from working on Sundays.

72.

Defendant will be unable to present any evidence of a legitimate, nondiscriminatory reasons for the acts and omissions raised herein – namely, reassigning Plaintiff's shifts to a less-qualified employee whose religious beliefs did not prevent him from working on any specific days and by terminating her employment – and for otherwise treating Plaintiff less favorably than her similarly situated counterparts who are not members of the Apostolic Church.

73.

Defendant further discriminated against Plaintiff by failing and refusing to provide a reasonable accommodation to Plaintiff for her genuinely held religious beliefs.

74.

Plaintiff will prove that Defendant's stated reasons are pretextual and were indeed motivated by Plaintiff's religion and/or refusal to accommodate Plaintiff's genuinely held religious beliefs.

75.

Plaintiff has been injured by Defendant's discrimination based on religion against her, and she is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages, if available, in the amount of not less than $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT IV:
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

76.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

77.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

78.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

79.

As alleged herein, Plaintiff had been employed with Defendant as a security guard, Plaintiff had been performing her duties in that role, and she was otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

80.

Defendant rated Plaintiff's performance in the position of security guard was satisfactory to exemplary at all times.

81.

As alleged herein, Plaintiff has disabilities, a history of disabilities, and was perceived by Defendant as having disabilities, that substantially limits a number of major life activities.

82.

Specifically, Plaintiff suffers from Anxiety Disorder and Post-Traumatic Stress Disorder. All of these conditions, individually and in the aggregate, substantially limit several major life activities for Plaintiff such as difficulty concentrating, managing time, inability to remain organized, memory loss, inability to remain attentive, decreases in stamina, confusion, decreased stress tolerance, as well as the ability to work at times.

83.

Defendant was aware of Plaintiff's disabilities.

84.

As alleged herein, Defendant terminated Plaintiff's employment as a direct result of her

disabilities.

85.

In the alternative, and as alleged herein, Defendant terminated Plaintiff's employment immediately after Plaintiff advised Defendant that she was in need of a reasonable accommodation in the form of a temporary leave of absence as a direct result of her disabilities.

86.

Plaintiff has been injured by Defendant's discrimination based on disability and/or its refusal to provide a reasonable accommodation for Plaintiff's disabilities and to engage in the interactive process and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including backpay, injunctive relief in the form of reinstatement and/or front pay, compensatory and punitive damages in the amount of $300,000.00 or otherwise provided by statute, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT V:**
**RETALIATION**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

87.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

88.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to retaliate against an employee because she has opposed any unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a).

89.

As alleged herein, Plaintiff observed that Defendant was subjecting its female employees and applicants for employment less favorably than their similarly situated male counterparts. Specifically, Plaintiff observed that Defendant had a preference for hiring males to work at security guards, Defendant was paying entry-level female employees at a lower rate than males, and Defendant was attempting to cause its female employees to quit their employment once Defendant had hired a sufficient number of male security guards.

90.

As alleged herein, Plaintiff specifically opposed Defendant's discriminatory hiring and pay practices based on sex by raising such concerns to management. Opposition is an activity protected under Title VII of the Civil Rights Act.

91.

As alleged herein, Defendant became aware of the fact that Plaintiff had made an initial inquiry with the Equal Employment Opportunity Commission and intended to pursue a charge of discrimination based on Defendant's conduct alleged herein. Pursing charge of discrimination is an activity protected under Title VII of the Civil Rights Act.

92.

Because of Plaintiff's opposed Defendant's discriminatory practices based on sex, and initiated the process of filing a charge of discrimination with the Equal Employment Opportunity Commission, Defendant terminated Plaintiff's employment.

93.

Plaintiff has been injured by Defendant's retaliatory conduct in response to Plaintiff's participation in protected activities, and Plaintiff is entitled to all damages allowed under the Title

VII of the Civil Rights Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Audrey Eason respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Master Security Company, LLC, and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on race, and grant Plaintiff all relief allowable under the Title VII of the Civil Rights Act;

4) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for pay discrimination based on race, and grant Plaintiff all relief allowable under the Title VII of the Civil Rights Act;

5) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for discrimination based on religion, including Defendant's failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Title VII of the Civil Rights Act;

6) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for discrimination based on disability, including Defendant's failure to provide a

reasonable accommodation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

      7)     That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for retaliation, and grant Plaintiff all relief allowable under the Title VII of the Civil Rights Act;

      8)     For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 14th day of November, 2023.

KENNETH E. BARTON III
Georgia Bar No. 301171
*Attorney for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com