**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **AUDREY EASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:23-cv-461 (MTT)** |
| | ) | |
| **MASTER SECURITY COMPANY, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

Plaintiff Audrey Eason filed this action against her former employer, Master Security Company, LLC.  Doc. 1.  Eason asserts claims for sex discrimination, religious discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  She also asserts claims for disability discrimination and refusal to provide reasonable accommodation under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a).  *Id.* ¶¶ 45-93.  Master Security has moved for summary judgment on all claims and on damages.  Docs. 18; 27.  For the following reasons, Master Security's motion for summary judgment (Doc. 18) is **GRANTED** as to Eason's sex discrimination, religious discrimination, and retaliation claims under Title VII and **DENIED** as to Eason's ADA claims and the matter of damages.

## I. BACKGROUND[1]

On October 25, 2021, Eason was hired as a security guard by Master Security, a security and patrol service company.  Docs. 18-2 ¶¶ 1, 2; 22-1 ¶¶ 1, 2.  Around the time Eason was hired, she read Master Security's Employee Handbook and signed a statement attesting that she had read and understood the Handbook.  Docs. 18-2 ¶ 4; 22-1 ¶ 4; 18-10; 18-16 at 54:24-55:5.  The Handbook provides that all newly hired employees serve a "120-day probation period" and "[i]f, at any time during this period, the employee is unable to adapt successfully to the requirements of the position, the department, or the Company as a whole, employment can be terminated immediately." 18-2 ¶ 10; 22-1 ¶ 10; 18-14 ¶ 5; 18-12.  The Handbook also outlines Master Security's lateness and absenteeism policy.[2]  Docs. 18-2 ¶ 4; 22-1 ¶ 4, 28 ¶ 4; 18-14 ¶ 4.  From

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  As Master Security points out, the introduction section of Eason's brief in response to the summary judgment motion references facts which are not contained in Eason's response to Master Security's statement of material facts.  Doc. 22. Eason failed to provide her own statement of material facts pursuant to Local Rule 56.  M.D. Ga. L.R. 56. All material facts contained in Master Security's statement "which are not specifically controverted by specific citation to particular parts of materials in the record" are deemed admitted, "unless otherwise inappropriate."  *See id.*

The Court notes Eason did not conduct discovery.  Docs. 18-2 ¶ 37; 22-1 ¶ 37.  In brief, the deadline for discovery expired in this case with neither party conducting discovery.  Doc. 10.  The parties jointly moved to reopen discovery, and the Court granted an extension.  Docs. 11; 14.  Eason still failed to conduct discovery.  This is not unusual for Eason's counsel.  *See, e.g., Washington v. Gov't Emps. Ins. Co.,* No. 5:22-cv-457-MTT (M.D. Ga. July 17 2024); *Lloyd v. Twin Cedars Youth and Family Serv., Inc.*, No. 5:22-cv-195-MTT (M.D. Ga. May 26, 2022); *Gordon v. Bibb Cnty. Sch. Dist.*, No. 5:21-cv-143-TES (M.D. Ga. Apr. 23, 2021); *Assad v. Air Logistics and Eng'g Sols., LLC*, No. 5:20-cv-135-TES (M.D. Ga. Apr. 8, 2020); *Johnson v. Cirrus Educ. Grp., Inc.*, No. 5:20-cv-256c-MTT (M.D. Ga. July 1, 2020); *Scott v. Macon-Bibb Cnty. Ga.*, No. 5:21-cv-239-MTT; *Kendrick v. Talton et al*, No. 5:22-cv-381 (M.D. Ga. Oct. 27, 2022). After the extended discovery deadline expired, Eason requested a second extension, which the Court denied.  Docs. 15; 17.

[2] In her responses to Master Security's statement of material facts concerning the Handbook provisions, Eason admits she read and acknowledged receipt of the Handbook but then states Master Security "failed to point to any materials to establish" the relevant Handbook provisions.  Doc. 22-1 ¶ 4.  That is false.  True and correct copies of those provisions are attached to the statement of material facts.  Docs. 18-11; 18-12; *see* Doc. 18-14 ¶ 4.

the date of hire until her termination on December 10, 2021, Eason was a probationary employee.  Docs. 18-2 ¶¶ 1, 8; 18-6; 22-1 ¶¶ 1, 8; 18-14 ¶ 2.

On October 22, 2021, prior to the start of her employment, Eason completed and signed a "Voluntary Self-Identification of Disability Form" where she checked a box which stated "NO, I DON'T HAVE A DISABILITY."  Docs. 18-2 ¶ 12; 18-5; 22-1 ¶ 12. On the same form, Eason wrote "none" when asked if she needed accommodations.  *Id*. Despite these statements, Eason testified that she was diagnosed with PTSD around 2011.  Doc. 18-16 at 47:23-48:8.  Eason never provided anyone at Master Security with documentation, such as a diagnosis or doctor's note, that she suffered from anxiety or PTSD.  Docs. 18-2 ¶ 13; 22-1 ¶ 13; 18-16 at 49:5-12; 49:22-50:2; 63:10-19.  Nor was Eason taking medication during her employment.  *Id*.  Eason further testified that she had not seen a doctor for anxiety or PTSD for a year prior to working for Master Security.  Docs. 18-2 ¶ 15; 22-1 ¶ 15; 18-16 at 64:7-23.

Upon hire, Eason requested not to work on Sundays and Wednesday nights after 6:30 p.m. because of church.  Docs. 18-2 ¶ 23; 22-1 ¶ 23; 18-16 at 36:9-13.  That request was granted and Eason testified that she did not work on Sundays or Wednesday nights.  Docs. 18-2 ¶ 24; 22-1 ¶ 24; 18-9; 18-16 at 26:22-27:9.

At some point, Eason's cousin,[3] Andrew Mullis, told Eason that he was getting paid more than she.[4]  However, Eason does not know what Andrew was paid and has no documentation to support her bare assertion based on Andrew's alleged statement.

---

[3] Eason has two cousins who worked for Master Security during the span of Eason's employment: Andrew Mullis and Theresa Mullis.  Doc. 18-16 at 45:11-16.

[4] Eason cites no basis for the admissibility of Andrew's statement.

Docs. 18-2 ¶ 27; 22-1 ¶ 27; 18-16 at 45:20-46:16.  Other than that, Eason testified that she has no information that any other male employee, with her same job experience and time in service, received higher pay.  Docs. 18-16 at 46:18-47:8; 28 ¶ 32; 22-1 ¶ 27. According to Master Security's payroll records, Eason, Andrew, and other male employees were paid the same hourly wage.[5]

On November 24, 2021, Eason submitted an initial inquiry to the Equal Employment Opportunity Commission ("EEOC"), citing race, sex, and religion as reasons for her claim.  Docs. 22-1 ¶ 6; 28 ¶ 6; 22-3 at 3.  On the inquiry, Eason wrote "I do not have a disability."  Doc. 22-3 at 1.

Throughout her employment, Eason was frequently tardy, absent, abandoned post, failed to properly patrol, failed to follow call out protocol, failed to make proper rounds, and took excessive smoke breaks in violation of company policies.[6]  Docs. 18-2

---

[5] Eason argues that Master Security "has failed to cite to any evidence, or otherwise establish, that any of the employees in [Doc. 18-7] were male, or that they were indeed in 'similarly situated positions' as Eason."  Doc. 22-1 ¶ 32.  First, it is undisputed that Field Operations Supervisor Deon Headley-Johnson, based on her personal knowledge, identified the gender of employees on Master Security's payroll detail. Doc. 29 ¶ 6.  Second, the payroll detail simply identifies the hourly rates of all employees and is not, by itself, offered to show similarly situated employees.  Doc. 18-7.  Third, it is undisputed that the payroll detail demonstrates that Eason and Andrew were paid the same hourly wage.  Id.; see Docs. 18-2 ¶ 9; 22-1 ¶ 9.  In any event, there is no evidence that Eason was paid less than any similarly situated male employees.

[6] Citing no evidence, Eason purports to dispute this fact, arguing that the Field Operations Supervisor's statements in her affidavit (Doc. 18-14 ¶¶ 13-15) are inadmissible hearsay and violate the best evidence rule.  Doc. 22-1 ¶¶ 21, 29.  While Eason claims that "there is nothing contained in the affidavit … to suggest that its Field Operations Supervisor had any personal knowledge" of the performance concerns at issue (Doc. 22-1 ¶ 29), this is clearly not true.  The affidavit affirms that the Field Operations Supervisor's "job responsibilities include supervising operations and staff including … Eason."  Doc. 18-14 ¶ 1.  Likewise, the Field Operations Supervisor's supplementary affidavit avers: "As supervisor, I personally am aware of the poor performance of Audrey Eason, including [Eason]'s tardiness, post abandonment, failure to make proper rounds, failure to properly patrol, excessive smoke breaks, absences, and failure to follow call out protocol, which are all violations of company policies."  Doc. 29 ¶ 4.  Further, Eason's job performance issues are supported by text messages between Siddons and Eason.  See Docs. 22-5; 22-6; 18-13 at 4 (late on November 29, 2021), 9 (post abandonment issue on December 1, 2021), 13 (late on December 4, 2021), 14 (late on December 6, 2021) (cf. Doc. 18-16 at 25:22-26:10), 15 (call out on December 8, 2021), 18 (summary of job performance issues).

¶ 29; 22-1 ¶ 29; 18-14 ¶¶ 13, 15.  On December 9, 2021, Eason sent a text message to her direct supervisor, Clinton Siddons, which stated:

> Hey, I need to take a couple weeks for my mental health. My anxiety has started attacking a lot since working at the Security company. I'm not a confrontational person so even this is hard for me, but I would like the pay that you all start at which is $14 per hr, and my hours that I was guaranteed upon hire without Sundays. I also asked for someone else of authority's number because you last said it was becoming to devicive so it makes it difficult for me to send these types of messages. If you could let me know your answers on these matters at your earliest convenience that would be grest.

Docs. 18-2 ¶ 14; 18-13; 22-5 at 1, 5.  Eason's employment was terminated the following day.  Docs. 18-2 ¶ 1; 22-1 ¶ 1.

Eason filed her EEOC Charge on or around April 22, 2022.  Docs. 18-2 ¶ 6; 18-4; 22-1 ¶ 6.  The EEOC dismissed Eason's Charge, and Eason timely filed this action based on alleged sex discrimination, pay discrimination, religious discrimination, and disability discrimination on November 14, 2023.  Doc. 1.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[]—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion[.]"  Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

Eason's complaint asserts claims against Master Security under Title VII for (1) sex discrimination, (2) religious discrimination, and (3) retaliation.  Doc. 1 ¶¶ 45-54, 55-64, 65-75, 87-93.  Eason also asserts claims against Master Security under the Americans with Disabilities Act ("ADA") for (1) disability discrimination and (2) refusal to provide reasonable accommodation.  *Id*. ¶¶ 76-86.

### A. Title VII Claims

To succeed on a Title VII discrimination claim, an employee must present either direct or circumstantial evidence of discriminatory intent.  "Direct evidence is 'evidence, which if believed, proves existence of a fact in issue without inference or presumption.'" *Burrell v. Bd. of Trustees of Ga. Mil. Coll*., 125 F.3d 1390, 1393 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)); *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017).

Eason relies on circumstantial evidence to prove discriminatory intent.  Doc. 22 at 7.  In the absence of direct evidence, a plaintiff can rely on either the *McDonnell Douglas* burden-shifting framework or present a convincing mosaic of circumstantial evidence sufficient to create a triable issue of fact as to whether the defendant acted with discriminatory intent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310-11 (11th Cir. 2023). Regardless of the specific framework, the question ultimately is "whether the evidence permits a reasonable factfinder to find that the employer [discriminated] against the employee."  *Berry*, 84 F.4th at 1311.

Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination.  411 U.S. at 802.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  This burden of production means the employer "need not persuade the court that it was actually motivated by the proffered reasons," but must produce evidence sufficient to "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff."  *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

A plaintiff must then show that the employer's stated reason is in fact pretext for discrimination.  *Kragor*, 702 F.3d at 1308.  This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.* at 1308 (emphasis added) (quoting *Burdine*, 450 U.S. at 256).  Ultimately, the burden of persuasion rests with the plaintiff who must show that the proffered reasons for the employment action were pretextual—thereby permitting, but not compelling, the trier of fact to conclude that the employment action at issue was the product of impermissible discrimination.

### 1. Title VII Sex Discrimination Claims

#### a. Termination and shift assignment

Eason's complaint alleges that she was "one of several female security guards who were hired when [Master Security] was in desperate need to fill positions," and that

once Master Security was able to hire a sufficient number of male employees, Master Security terminated several female employees including Eason. Doc. 1 ¶ 50. According to Eason's complaint, Master Security "explicitly stated that it preferred to hire male security guards." *Id*. Regarding her shifts, Eason alleges that Master Security "took away [] Eason's Thursday shift and gave it [to] Mr. Mullis, resulting in him being assigned to work 40 hours per week" even though he was "initially assigned to work 32.5 hours per week." Doc. 1 ¶ 24. "The result was that [Master Security] provided the male employee with more scheduled shifts tha[n] [Eason]." *Id.* ¶ 49.

For the most part, Eason points to no evidence in the record to support these allegations. *See Bald Mountain Park, Ltd v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). Certainly, there is no evidence that "once [Master Security] hired a sufficient number of male [security guards], it terminated the employment of Ms. Eason and several other female security guards." *See* Doc. 1 ¶ 50. Just as certainly, there is no evidence that Master Security "explicitly stated that it preferred to hire male security guards." *Id*. It seems Eason recognizes she lacks evidence to support such allegations because she does not contend that there is direct evidence of discrimination. *See* Doc. 22 at 7. Rather, she relies on the *McDonnell Douglas* framework to avoid summary judgment. *Id*.

To establish a prima facie case of discrimination, a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job or benefit at issue and (4) the employer treated similarly situated employees who were not members of the plaintiff's class more

favorably.  *Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc).  To meet the fourth prong, a comparator must be "similarly situated in all material respects," meaning that the plaintiff and comparators are "sufficiently similar, in an objective sense, that they cannot reasonably be distinguished."  *Id*. at 1218, 1228 (quotation marks omitted).

Eason cannot establish a prima facie case of discrimination based on either her termination or alleged shift assignment because she has not identified a comparator who is similarly situated in all material respects.  The only possible comparator Eason mentions is her cousin Andrew.  Doc. 18-16 at 37:10-15.  But Eason offers no evidence, or even argument, that Andrew or any other Master Security employee was similarly situated to her, claiming instead that Master Security has failed to identify similarly situated employees.  Docs. 22 at 11; 22-1 ¶ 9.  That, of course, is not Master Security's burden.

Further, Eason's supervisor affirmed that she had numerous performance issues during the short span of her employment, including tardiness, post abandonment, failure to make proper rounds, failure to properly patrol, excessive smoke breaks, absences, and failure to follow call out protocol.[7]  Docs. 18-2 ¶ 29; 22-1 ¶ 29; 18-14 ¶¶ 13, 15.  And Eason cites no evidence that any employee, including Andrew, who was allegedly "reassigned" to Eason's Thursday shift, was similarly situated to her in terms of poor job performance.  *See Lewis*, 918 F.3d at 1227-28 (a similarly situated comparator will ordinarily "have engaged in the same basic conduct" as the plaintiff, "will have been

---

[7] The record wholly refutes Eason's unsupported, conclusory allegation in her complaint that "her performance was exemplary at all times."  Doc. 1 ¶ 48.

subject to the same employment polic[ies]," will have had the same supervisor, and "will share the plaintiff's employment or disciplinary history").  In short, Eason has not pointed to a single male employee who was similarly situated in all material respects and thus has not established a prima facie case of discrimination.

Moreover, Master's Security's "reassign[ment]" of shifts does not constitute an adverse action.  Eason does not allege that Master Security reduced her scheduled hours because of this "reassign[ment]."  Doc. 1 ¶¶ 24, 49.  She simply claims that Master Security giving Andrew "additional shifts on other days of the week, specifically Thursdays," somehow constituted less favorable treatment of her.  Docs. 22 at 2; 1 ¶ 70.  The mere fact that Eason was not assigned to work Thursdays is not evidence of "some 'disadvantageous' change in a term or condition of employment."[8]  There is no evidence in the record that Eason was entitled to work, or could reasonably expect to work, on any particular day of the week, in the short time she was employed by Master Security.  *See, e.g.,* Doc. 18-9.  Shift assignment does not constitute an adverse employment action.

Even if Eason could establish a prima facie case, Master Security has met its burden of providing legitimate, non-discriminatory reasons for Eason's termination.  The Field Operations Supervisor, Deon Headley-Johnson, testified by affidavit that Eason "was only hired in late October but by early December [] had been frequently tardy, had also been absent several times, and did not properly perform work duties, despite being in the probationary period."  Doc. 18-14 ¶ 13; *see generally* Docs. 18-13; 22-6.

---

[8] *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024) (holding that "a plaintiff need only demonstrate "some harm"—not a "significant" harm—"respecting an identifiable term or condition of employment" to establish the adverse employment action element of their disparate treatment claim).

Additionally, Headley-Johnson affirmed that she and Siddons, Eason's direct supervisor, discussed Eason's "tardiness, post abandonment, failure to make proper rounds, failure to properly patrol, excessive smoke breaks, absences, and failure to follow call out protocol, which were all violations of company policies" and "ultimately le[d] to [Eason]'s termination."  Doc. 18-14 ¶ 15.

Eason has not offered any evidence to suggest that the performance issues identified by her supervisors were a pretext for her termination.[9]  *Berry*, 84 F.4th at 1313 (Where an employer provides a legitimate, nondiscriminatory reason for its adverse action, "the employee needs to rebut that explanation."); *see also id*. at 1314 (Abudu, J., concurring) ("[A]lthough this Circuit treats the pretext analysis under the convincing mosaic approach and the pretext analysis embedded within the *McDonnell Douglas* framework as alternatives, they are—in effect—one and the same."); *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023) ("[T]he convincing mosaic inquiry is identical to the final stage of the *McDonnell Douglas* framework: both ask whether there is enough evidence for a reasonable jury to infer intentional discrimination.").  On this record, no reasonable jury could conclude that Master Security terminated Eason's employment because of her sex.

Accordingly, Master Security is entitled to summary judgment on Eason's termination and shift assignment sex discrimination claims.

---

[9] Strangely, Eason claims only that the "sole legitimate, non-discriminatory reason" for Eason's termination proffered by Master Security is that Master Security hired several female employees before and after Eason was hired.  Doc. 22 at 11.  That was not among the many actual reasons proffered by Master Security.  *See* Doc. 18-1 at 16.  Most likely, the evidence of female employees was proffered to rebut Eason's unfounded allegation in her complaint that Master Security fired several female employees in order to replace them with male employees.  *See* Doc. 1 ¶ 50.

b. Wage discrimination

Eason alleges that Master Security "paid [Eason] at a lower hourly rate than [she] was promised when she was hired, less than [Master Security's] advertised starting pay, and less than [Eason]'s similarly situated male coworkers."  Doc. 1 ¶ 58.  Eason's complaint alleges that she "found out" that Master Security "was paying the newly-hired male employees at least $1.00 more per hour than the female security guards who had been employed longer."  Doc. 1 ¶ 23.  Eason cites no evidence to support that allegation and it too has fallen by the wayside.  Rather, she purports to rely on circumstantial evidence to avoid summary judgment.  Master Security argues that Eason has not carried her burden to establish a prima facie case of sex or gender-based wage discrimination.  Doc. 18-1 at 10-12.  The Court agrees.

In the Eleventh Circuit, "a female Title VII plaintiff establishes a prima facie case of sex discrimination [based on disparate pay] by showing that she occupies a job similar to that of higher paid males."  *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1018-19 (11th Cir. 1994) (alteration in original) (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992)); *see Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1319 (11th Cir. 2024).  As previously explained, comparators must be "similarly situated in all material respects" to the plaintiff.  *Lewis*, 918 F.3d at 1218.  And, as noted, Eason has failed to identify any male employees who were similarly situated in all material respects to Eason.  Contrary to the allegation that she "found out" newly hired males were paid more than females, Eason testified that her wage claims are based solely on cousin Andrew's alleged statement that he was paid more than she.  Doc. 18-16 at 45:14-47:2.  Again, Eason offers no basis for the admission of this

statement and Master Security's unrefuted payroll detail shows that she and Andrew were paid the same hourly wage.  Docs. 18-2 ¶ 9; 22-1 ¶ 9; 18-7.  But even if Eason's account of Andrew's statement is true, Eason, again, does not attempt to show that Andrew was similarly situated to her in any respect and therefore cannot carry her burden under *McDonnell Douglas*.[10]

Given these facts, it necessarily follows that Eason has failed to present a convincing mosaic of circumstantial evidence to infer intentional discrimination based on disparate pay.

Accordingly, Master Security is entitled to summary judgment on Eason's Title VII wage-discrimination claim.

### 2. Title VII Disparate Treatment Religious Discrimination and Failure-to Accommodate Claims

Eason appears to proceed under two disparate treatment religious discrimination theories: a failure-to-reasonably-accommodate disparate treatment claim and a traditional disparate treatment claim.  The Court addresses each in turn.

#### a. Failure to reasonably accommodate

Eason's complaint generally alleges that Master Security discriminated against her by "failing and refusing to provide a reasonable accommodation to [Eason] for her genuinely held religious beliefs."  Doc. 1 ¶ 73.  However, Eason clarifies in her response brief that her failure-to-accommodate claim is that "Master Security took away some of [Eason's] regularly-scheduled shifts, and reassigned said shifts to a less qualified

---

[10] Eason alleges in her complaint that Master Security "paid [Eason] at a lower hourly rate than [she] was promised when she was hired [and] less than [Master Security's] advertised starting pay."  Doc. 1 ¶ 58. Eason has not pursued this apparent breach of contract allegation and thus it is abandoned.  *See* Doc. 22.  Certainly, there is no evidence to support it.

individual who was not unable to work on days other than those that were reassigned as a result of his religion." Doc. 22 at 10. The Court is not sure this clarifies anything, but, in any event, Eason points to no evidence to support this allegation; she simply cites her complaint.

In religious accommodation cases, courts apply a burden-shifting framework akin to *McDonnell Douglas*. *See Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012). To establish a prima facie case, a plaintiff must show that (1) her sincere and bona fide religious belief conflicted with an employment requirement and (2) her employer took an adverse employment action against her because of her inability to comply with the employment requirement or because of the employer's perceived need for her reasonable accommodation. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (per curiam).

Here, Eason fails to establish her prima facie case. Clearly, Eason cannot claim that Master Security failed to accommodate her request to not be scheduled to work Sundays or Wednesday nights. Doc. 22 at 10 (citing Doc. 1 ¶ 70). It is undisputed that Master Security granted that requested accommodation. Docs. 18-2 ¶ 24; 22-1 ¶ 24; 18-9; 18-16 at 26:22-27:9. That leaves Eason's claim that Master Security took away Eason's shifts on other days and gave them to someone else who was able and willing to work on Sundays and Wednesday nights. Docs. 1 ¶ 70; 22 at 10. This is the cousin Andrew allegation offered to support her sex discrimination claim. Eason does not explain how shift assignment is a failure to accommodate her request to not work on Sundays and Wednesday nights. Eason does not allege that shift assignment reduced her pay and even if she had, no evidence supports that. Doc. 1 ¶¶ 24, 49. As best the

Court can tell, Eason is complaining that she was scheduled to work on Mondays instead of Thursdays.  Doc. 22-4 at 1-2.  Moreover, a failure-to-accommodate claim requires a conflicting employment requirement, and Eason points to none to support her shift assignment theory.  For the reasons already discussed, Master Security simply assigning different shifts to different employees without reducing Eason's scheduled hours is not an adverse employment action.

Accordingly, Master Security is entitled to summary judgment on Eason's failure-to-accommodate claim.

### b. Traditional disparate treatment claim

Eason's complaint alleges that Master Security "terminated [her] employment either as a result of her faith or because her genuinely held religious beliefs [] prevented [her] from working on Sundays."  Doc. 1 ¶ 71.  Eason cites no evidence to support this allegation.  That is understandable given that Master Security readily granted her requested accommodation.  Consequently, it seems that Eason has abandoned the claim.  It fails in any event.

"To establish a prima facie case of disparate treatment religious discrimination under Title VII with circumstantial evidence, a plaintiff must show: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated employees who were not members of her protected class more favorably; and (4) she was qualified for the job or benefit at issue."  *Dixon v. Palm Beach Cnty. Parks & Recreation Dep't*, 343 F. App'x 500, 501 (per curiam) (11th Cir. 2009).  The Court assumes that Eason satisfies the first, second, and fourth

elements of her prima facie case. She belonged to the Apostolic Church, she was qualified for her job, and she suffered an adverse employment action—termination.

But for the third prong of her prima facie case, Eason provides no evidence that Master Security treated similarly situated employees who were not members of Eason's protected class more favorably in similar circumstances. Once again, Eason offers no evidence or argument that any Master Security employee was similarly situated to her. And Eason points to no evidence suggesting that another employee who was outside Eason's protected class engaged in the same conduct as Eason—tardiness, post abandonment, failure to make proper rounds, failure to properly patrol, excessive smoke breaks, absences, and failure to follow call out protocol—and was not terminated. Docs. 18-14 ¶ 15; 29 ¶ 4; *see Lewis*, 918 F.3d at 1227-28. Thus, Eason fails to establish that Master Security treated similarly situated employees who were not members of her protected class more favorably, defeating her prima facie case of religious discrimination.

Even if Eason could establish her prima facie case, she has not shown that Master Security's legitimate, nondiscriminatory reasons for her termination were pretextual. Eason's supervisor affirmed that she was terminated because of poor performance, citing multiple violations of company policies in the span of just under two months. *See* Docs. 18-14 ¶¶ 13-15; 18-13; 22-6; 29 ¶ 4. Eason presented no evidence that rebuts her supervisor's affidavit or supports any reasonable inference that religion was the real reason for her termination. Therefore, Eason can neither present a convincing mosaic nor demonstrate that religion played any role in Master Security's decision to terminate her employment.

Accordingly, Master Security is entitled to summary judgment on Eason's disparate treatment religious discrimination claim.

### 3. Title VII Retaliation

Title VII prohibits an employer from retaliating against an employee for "oppos[ing] any practice made an unlawful employment practice by this title," (i.e., opposition clause) or for "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this title" (i.e., participation clause). 42 U.S.C. § 2000e-3(a); *see EEOC v. Total Sys. Servs., Inc.*, 221 F.2d 1171, 1174 (11th Cir. 2000). *See* 42 U.S.C. § 2000e-3. Courts apply the *McDonnell Douglas* burden-shifting framework to Title VII retaliation claims that rely on circumstantial evidence, like this one. *See, e.g., Bailey v. Metro Ambulance Servs.*, 992 F.3d 1265, 1277 (11th Cir. 2021) (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). As the law currently stands in the Eleventh Circuit, plaintiffs can also prove retaliation through the convincing mosaic approach. *See Berry v. Crestwood Healthcare L.P.,* 84 F.4th 1300 (11th Cir. 2023); *Yelling v. St. Vincent's Health Sys.,* 82 F.4th 1329 (11th Cir. 2023).

Eason claims in her complaint that Master Security retaliated against her for opposing Master Security's alleged discriminatory hiring and pay practices based on sex by raising such concerns to management and filing an initial inquiry with the EEOC. Doc. 1 ¶¶ 87-93. Specifically, Eason alleges that Master Security "became aware of the fact that Plaintiff had made an initial inquiry with the Equal Employment Opportunity Commission and intended to pursue a charge of discrimination" and terminated her employment in retaliation. *Id.* ¶¶ 91-92. Here again, Eason cites no evidence to

support this allegation.  Master Security argues it did not have notice of Eason's protected activities, and even if it did, her termination was not causally connected to her protected activity.  Doc. 18-1 at 14-15.  The Court agrees.

To establish a prima facie case of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse action; and (3) that the adverse action would not have occurred but for the protected activity.  *Patterson v. Ga. Pac., LLC,* 38 F.4th 1336, 1345 (11th Cir. 2022); *Gogel v. Kia Motors Mfg. of Ga., Inc.,* 967 F.3d 1121, 1135 (11th Cir. 2020).  Here, Eason alleges that "raising [] concerns to management" and making an initial inquiry with the EEOC both constituted opposition under Title VII.  Docs. 1 ¶¶ 90-91; 22 at 13-14.

The Supreme Court has held that the term "oppose" in the opposition clause takes its ordinary meaning: "to resist or antagonize ...; to contend against; to confront; resist; withstand."  *Demers v. Adams Homes of N.W. Fla., Inc.*, 321 Fed. App'x. 847, 852 (11th Cir. 2009) (quoting *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn*., 555 U.S. 271, 276 (2009)).  "[T]o engage in protected activity, the employee must still, 'at the very least, communicate her belief that discrimination is occurring to the employer,' and cannot rely on the employer to 'infer that discrimination has occurred.'"  *Id*. (quoting *Webb v. R & B Holding Co., Inc.*, 992 F. Supp. 1382, 1390 (S.D.Fla.1998).

Because there is no evidence that Master Security was aware of Eason's initial inquiry to the EEOC, Eason now argues that her internal complaint, in the form of the text message to Siddons, was protected opposition.  Doc. 22 at 13.  Eason's text message stated, in pertinent part: "I would like the pay that you all start at which is $14

per hr, and my hours that I was guaranteed upon hire without Sundays."[11]  Doc. 22-5 at 1.  This request does not suffice under Title VII because it does not announce opposition to any discriminatory practice.  Eason maintains that her text message opposed Master Security's "discriminatory hiring and pay practices based on sex," but there is no mention or even insinuation of sex discrimination, or any form of discrimination, in her text message.  *See Crawford,* 555 U.S. at 276 (internal quotation marks omitted) ("When an employee communicates to [his] employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.").  Therefore, Eason's text message was not protected activity and her prima facie retaliation case fails on this element.

Accordingly, Eason cannot survive summary judgment on her Title VII retaliation claim.

**B. ADA Discrimination Claims**

The ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).  Courts evaluating

---

[11] For reference, the full text message is again transcribed below.

Hey, I need to take a couple weeks for my mental health. My anxiety has started attacking a lot since working at the Security company. I'm not a confrontational person so even this is hard for me, but I would like the pay that you all start at which is $14 per hr, and my hours that I was guaranteed upon hire without Sundays. I also asked for someone else of authority's number because you last said it was becoming to devicive so it makes it difficult for me to send these types of messages. If you could let me know your answers on these matters at your earliest convenience that would be grest.

ADA discrimination claims use the *McDonnell Douglas* burden-shifting framework. *See Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citing *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021). Alternatively, ADA discrimination plaintiffs may proceed under the convincing mosaic approach. *Id*. at 1197.

An ADA plaintiff establishes a prima facie case by showing (1) she has a disability; (2) she is a qualified individual under the ADA; and (3) the employer discriminated against her "on the basis of disability." *See Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023); 42 U.S.C. § 12112(a); *see also Akridge,* 93 F.4th at 1192 (holding that § 12112(a) still imposes a "but-for" causation standard after the 2008 amendment to the ADA. One way an employer unlawfully discriminates against a disabled employee is by failing to provide reasonable accommodations for known physical or mental limitations unless the accommodation would impose an undue hardship on the employer's business. *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1262 (11th Cir. 2007); 42 U.S.C. § 12112(b)(5)(A).

Eason's complaint alleges that Master Security "terminated [Eason]'s employment as a direct result of her disabilities" or, in the alternative, Master Security terminated her employment immediately after Eason advised Master Security that "she was in need of a reasonable accommodation in the form of a temporary leave of absence." Doc. 1 ¶¶ 84, 85. Eason alleges that she suffers from anxiety disorder and PTSD, and that these conditions, alone and together, substantially limit her major life activities, including her ability to work. Doc. 1 ¶¶ 9, 12, 81, 82. She further alleges that

her supervisors were aware that she has and sometimes struggles with anxiety and PTSD. *Id*. ¶¶ 13, 83.

Contrary to Eason's allegation in her complaint that Master Security was "aware" of her disabilities, Eason attested when hired that she did not have a disability and needed no accommodations. Doc. 18-5. Consistent with that, she told the EEOC that she did not have a disability. Doc. 22-3 at 1. And it is undisputed that Eason never told anyone at Master Security that she suffers from PTSD. *See* Doc. 22-1 ¶ 13.

That leaves "anxiety," which Eason mentioned only in her December 9, 2021 text message to Siddons. *See* Docs. 22-1 ¶ 14, 22-5 at 1, 5. On this point, Master Security falters. In its main brief, Master Security simply argues that Eason "never made a specific request for a reasonable accommodation." Doc. 18-1 at 14. Of course, Eason responds that she never had a chance; Master Security almost immediately fired her. In its reply brief, Master Security argues that Eason's disabilities were not "substantially limit[ing]," largely relying on cases which were superseded by statute upon passage of the ADA Amendments Act of 2008 ("ADAAA"). *See, e.g., Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014) (acknowledging the ADAAA abrogated preexisting interpretations of the phrase "substantially limits"). On the whole, the record is clear—Eason was fired for good and ample cause. However, given the temporal proximity of Eason's last minute anxiety accommodation request and her termination, the Court cannot, at this point, say as a matter of law that her ADA claims fail. Master Security is not entitled to summary judgment on Eason's ADA claims.

Similarly, while it is difficult on these facts to see how, as a matter of fact, Eason can prove damages, the Court cannot say as a matter of law that Eason failed to

mitigate her damages.  Accordingly, Master Security's motion for summary judgment in that regard is denied.

## VI. CONCLUSION

For the foregoing reasons, Master Security's motion for summary judgment (Doc. 18) is **GRANTED** as to Eason's sex discrimination, religious discrimination, and retaliation claims under Title VII and **DENIED** as to Eason's ADA claims and the matter of damages.

**SO ORDERED**, this 17th day of April, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT